Wade RINER, Appellant/Cross–
Appellee,

v.

Gaylon Ray NEUMANN,
Appellee/Cross–
Appellant,

and

Novastar Mortgage, Inc.,
Appellee/Cross–
Appellee.

No. 05–10–00445–CV.

Court of Appeals of Texas,
Dallas.

Nov. 16, 2011.

Jeffrey R. Seckel, McGuire, Craddock, Strother, PC, Dallas, TX for Appellant.

John Walter Reeder, Attorney at Law, Plano, TX, James David Brown, Dawn Theiss, Winstead, PC, Dallas, TX, for Appellees.

Before Justices FITZGERALD, FRANCIS, and LANG–MIERS.

## OPINION

Opinion By Justice FITZGERALD.

The principal issue in this trespass-to-try-title case is which of two liens on a condominium had priority over the other. On summary judgment, the trial judge decided that a lien held by appellee Novastar Mortgage, Inc. had priority over a lien for unpaid assessments held by the condominium homeowners' association. The trial judge also awarded the prevailing party, appellee Gaylon Ray Neumann, $7,750 in damages against appellant Wade Riner, but she denied Neumann's request for attorney's fees. Riner appealed, and Neumann cross-appealed. We affirm the judgment.

### I. BACKGROUND

This case arises from two foreclosure sales of the same condominium that occurred in quick succession. The summary-judgment evidence showed that the condominium's previous owner defaulted both on paying his homeowner's assessments and on a home-equity loan from Novastar. Riner bought the condominium in June 2006 at a foreclosure sale based on the assessment lien, and Neumann bought the condominium in August 2006 at a foreclosure sale based on the home-equity lien. Neumann moved some personal property into the condominium, but Riner later removed Neumann's property and took possession of the unit.

Neumann sued Riner for trespass to try title and damages. He sought a judgment awarding him title to and possession of the condominium, plus damages, attorney's fees, and other relief. Neumann also joined Novastar as a defendant, asserting an alternative claim that, if Riner prevailed in his assertion of superior title, Novastar had committed fraud against Neumann in the foreclosure sale.

After Riner and Novastar answered, Neumann filed an instrument entitled "Proof of Superior Common Source of Title," which included certified copies of documents demonstrating the condominium's chain of title. Shortly thereafter, Neumann moved for summary judgment on the entire case. Novastar then filed its own motion for summary judgment, in which it supported Neumann's request for summary judgment against Riner but sought a no-evidence summary judgment against Neumann on his claim against Novastar. The parties thereafter filed various responses, supplements, and objections pertaining to the summary-judgment motions.

After a hearing, the trial judge signed an order entitled "Final Summary Judgment" in which she granted Neumann's motion against Riner and denied his motion against Novastar. Riner appealed, but we dismissed his appeal for lack of jurisdiction because the judgment awarded Neumann not only the sum of $7,750 but also an additional $25.48 for each day that Riner retained possession of the premises after judgment. We held that the additional per diem award made the judgment too indefinite to be a final judgment. *See Riner v. Neumann*, No. 05–07–01053–CV, 2008 WL 4938438 (Tex.App.-Dallas Nov. 20, 2008, no pet.) (mem. op.).

Neumann then filed a motion for judgment in the trial court asking the court to delete the per diem award. Riner filed a response. The trial judge signed an amended final summary judgment in which she again granted summary judgment in favor of Neumann against Riner and denied Neumann's motion for summary judgment against Novastar. The judge also awarded Neumann title to and possession of the property, plus $7,750 in damages against Riner, but she denied Neumann's request for attorney's fees. As previously noted, Riner appealed, and Neumann cross-appealed.

## II. RINER'S APPEAL

Riner asserts three issues on appeal. In his first issue, he argues that Neumann did not properly prove the existence of Novastar's lien. In his second issue, he argues that even if Neumann properly proved up the Novastar lien, the Novastar lien was inferior to the homeowners' association's assessment lien through which Riner obtained title. And in his third issue, Riner argues that Neumann did not prove as a matter of law his claimed $7,750 in damages.

### A. Standard of review

■ We review a summary judgment de novo. *In re Estate of Hendler*, 316 S.W.3d 703, 707 (Tex.App.-Dallas 2010, no pet.). When a plaintiff seeks summary judgment on his own claim, he must conclusively establish every necessary element in his favor. *Id.* A matter is conclusively established by the evidence if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Id.* We must take the evidence favorable to the nonmovant as true and draw every reasonable inference from the evidence in favor of the nonmovant. *Id.*

### B. Existence of Novastar lien

In his first issue, Riner argues that Neumann failed to prove as a matter of law the existence of the Novastar lien through which he claims title. He contends that the Novastar lien is not reflected in the "Proof of Superior Common Source of Title" that Neumann filed early in the litigation, and that Texas Rule of Civil Procedure 794 precluded Neumann from relying on extrinsic proof of the Novastar lien. Rule 794 provides as follows:

The court may allow either party to file an amended abstract of title, under the same rules, which authorize the amendment of pleadings so far as they are applicable; but in all cases the documentary evidence of title shall at the trial be confined to the matters contained in the abstract of title.

TEX.R. CIV. P. 794. Riner does not dispute appellees' contention that documentary proof of the Novastar lien appears elsewhere in the summary-judgment record; rather, he argues that Rule 794 precluded Neumann from relying on that proof.

■ We reject Riner's argument. Rules 783 through 809 apply to suits for trespass to try title. Within those rules, Rules 791 through 794 address the procedures relating to abstracts of title. Rule 791 permits a party to demand an abstract of title from its opponent, and Rule 792 sets forth the deadline for filing the abstract. Rule 793 governs the contents of the abstract, and Rule 794 allows the trial court to permit the filing of an amended abstract. We conclude these rules are inapplicable because the record contains no demand for an abstract of title and because Neumann filed his "Proof of Superior Common Source of Title" under Rule 798 rather than under the rules governing abstracts of title. Neumann relied on the filed documents to show that he and Riner both claimed title through a common source, namely Cedar I, Ltd., the original developer of the condominium project. We conclude that Rule 794 did not apply to Neumann's filing of these documents under Rule 798, and thus that Rule 794 did not preclude Neumann from filing and relying on additional summary-judgment evidence to demonstrate the superiority of his claim over Riner's.

■ Moreover, even if Rule 794 did apply, we conclude any technical noncompliance with its terms was not harmful error because Riner received ample notice of Neumann's reliance on the Novastar lien. Neumann filed the Novastar lien instrument as summary-judgment evidence more than three weeks before the summary-judgment hearing. Also, the documents Neumann filed in his Rule 798 filing included a substitute trustee's deed that mentioned the Novastar lien and identified where it was filed in the records of Dallas County. Because Riner had ample notice of Neumann's reliance on the Novastar lien instrument, and of its terms, there was no harmful error. *Cf. Farhart v. Blackshear*, 434 S.W.2d 395, 400 (Tex.Civ. App.-Houston [1st Dist.] 1968, writ ref'd n.r.e.) ("Appellant had ample notice of all the instruments offered by appellees material to the questions considered, and the trial court did not err in admitting these instruments into evidence.").

We reject Riner's first issue on appeal.

**C. Priority of Novastar lien**

In Riner's second issue, he argues that the trial judge erred by concluding as a matter of law that Novastar's lien was superior to the homeowner's assessment lien through which Riner obtained title.

**1. Relevant facts**

The following facts are supported by the summary-judgment evidence and appear to be undisputed. The Cedars I, Ltd. acquired the property on which the condominium complex is situated in 1983. On December 20, 1983, it filed its "Condominium Declaration for The Cedars" in the records of Dallas County. In 1989, Jose Reyes Lopez and his wife purchased the specific condominium unit involved in this lawsuit. During the 1990s, Lopez became the sole owner of the unit.

In 2004, Lopez took out a loan from Novastar and executed a document called "Texas Home Equity Security Instrument

(First Lien)" in favor of Novastar. Novastar recorded its lien on February 20, 2004. When Lopez took out the loan and granted the lien, and when Novastar recorded the lien, he was not delinquent on any dues or assessments to his homeowners' association, The Cedars Association, Inc. Lopez testified by affidavit that he used some of the money he borrowed from Novastar to improve the unit and that he used some of the money to pay off the original loan by which he purchased the unit. He further testified that he was current in paying his dues and assessments as late as April 15, 2005.

An assessment lien deed shows that Lopez defaulted on paying his assessments, and that The Cedars Association conducted a foreclosure sale on June 6, 2006. Riner bought the unit at that sale for $4,700. A substitute trustee's deed shows that Lopez also defaulted on his loan from Novastar, and that Novastar's substitute trustee conducted a foreclosure sale on August 1, 2006. Neumann bought the unit at that sale for $42,810.27.

Neumann possessed the unit from August 2 through September 11, 2006. On September 12, 2006, he was locked out of the unit and discovered that Riner had taken possession of the unit and removed Neumann's property from it. Riner took possession of the unit without Neumann's permission.

**2. Rules governing the priority of liens**

All parties rely, at least in part, on the condominium declaration as a source of rules governing the priority of liens on condominium units in The Cedars. The pertinent provisions of the declaration are found in paragraph 5.8 as follows:

5.8 *LIEN FOR ASSESSMENTS.*

a. All common monthly assessments and special assessments assessed but unpaid by a Unit Owner for its share of Common Expenses chargeable to its respective Condominium Unit ... shall constitute a lien on such Unit superior (prior) to all other liens and encumbrances, except only for:

(1) All taxes and special assessments levied by governmental and taxing authorities; and

(2) All liens securing sums due or to become due under any prior recorded purchase money mortgage, vendor's lien or deed of trust.

b. ... Such lien for the Common Expenses shall attach from the date of the failure of payment of the assessment....

Thus, the declaration provides that assessment liens are inferior or subordinate to (1) tax liens, and (2) prior recorded purchase money mortgages, vendor's liens, and deeds of trust.

The parties also discuss certain provisions of the Uniform Condominium Act, which Texas adopted in 1993 and which went into effect on January 1, 1994. *See generally* TEX. PROP.CODE ANN. §§ 82.001–.164 (West 2007 & Supp. 2010). In particular, the parties focus on § 82.113, which is entitled "Association's Lien for Assessments" and which addresses the relative priority of an assessment lien as compared to other liens. *See id.* § 82.113(b). But we conclude that § 82.113's provisions concerning lien priority do not apply in this case because The Cedars' condominium declaration was recorded before January 1, 1994. The applicability provision of the Uniform Condominium Act is § 82.002. Section 82.002(c) lists several sections of the Act, including § 82.113, that apply even to a condominium for which the declaration was recorded before January 1, 1994. *Id.* § 82.002(c). But even so, the listed sections of the Act do not apply if their application would

invalidate provisions of a condominium declaration recorded before 1994:

> The sections listed in this subsection apply only with respect to events and circumstances occurring on or after January 1, 1994, and do not invalidate existing provisions of the declaration, bylaws, or plats or plans of a condominium for which the declaration was recorded before January 1, 1994.

*Id.* Thus, to the extent § 82.113 contains provisions that provide for a different lien-priority scheme from that set forth in The Cedars' declaration, those provisions would "invalidate existing provisions of the declaration," and they do not apply.

For the foregoing reasons, we conclude that the lien-priority issue presented in this case is governed by The Cedars' condominium declaration recorded on December 20, 1983, and not by § 82.113 of the property code.

### 3. Application of the law to the facts

Paragraph 5.8 of the condominium declaration is the controlling provision. Under paragraph 5.8(a)(2), Novastar's lien took priority over the homeowner's assessment lien if Novastar's lien secured its loan under a "prior recorded ... deed of trust." Riner argues both that Novastar's lien was not "prior recorded" as compared to The Cedars' assessment lien and that Novastar's lien was not a "deed of trust." We reject both of his arguments.

#### a. "Prior recorded"

Novastar's lien was recorded on February 20, 2004. The question presented is whether The Cedars' assessment lien attached before or after that date. We conclude that the summary-judgment evidence conclusively established that the assessment lien attached after the Novastar lien was recorded.

■ Under paragraph 5.8(b) of the condominium declaration, an assessment "lien for the Common Expenses shall attach from the date of the failure of payment of the assessment." The evidence shows that Lopez, the prior owner of the unit, was current in paying his assessments both at the time he borrowed the money from Novastar and at the time Novastar recorded its lien instrument. Lopez also established by affidavit that he was current on all of his obligations to The Cedars Association, Inc. as late as April 14, 2005. Other evidence shows that Lopez started to fall behind on his assessments in May 2005. Thus, under paragraph 5.8(b) of the declaration, The Cedars' assessment lien attached no earlier than May 2005. By comparison, Novastar's lien was a "prior recorded" lien.

Riner argues that The Cedars' assessment lien was first in time under § 82.113(c) of the Uniform Condominium Act, which provides: "The association's lien for assessments is created by recordation of the declaration, which constitutes record notice and perfection of the lien." TEX. PROP.CODE ANN. § 82.113(c). That is, he contends the assessment lien attached on December 20, 1983—when the condominium declaration was recorded, and long before Novastar recorded its lien instrument. But even assuming Riner's interpretation of § 82.113(c) is correct, applying that interpretation in this case would invalidate the declaration's contrary provision that assessment liens attach only when assessments become delinquent. Under § 82.002(c), we do not apply § 82.113 to invalidate any existing provisions of the declaration. *See Holly Park Condo. Homeowners' Ass'n, Inc. v. Lowery,* 310 S.W.3d 144, 148 (Tex.App.-Dallas 2010, pet. denied). Accordingly, we conclude that Novastar's lien was a "prior recorded" lien as compared to The Cedars' assessment lien.

### b. "Deed of trust"

The next question is whether Novastar's lien instrument, entitled "Texas Home Equity Security Instrument (First Lien)" is a "deed of trust" within the meaning of paragraph 5.8(a)(2) of The Cedars' condominium declaration. We conclude that it is.

The parties do not contend that the term "deed of trust" has a special or unusual meaning in the condominium declaration, and we have found no provision in the declaration giving a special definition to "deed of trust." Accordingly, we give the term its ordinary meaning. *See Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex.2011) ("When a contract leaves a term undefined, we presume that the parties intended its plain, generally accepted meaning."); *Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 435 (Tex.App.-Dallas 2011, no pet. h.) ("The [condominium] declaration forms a contract between the homeowners association and the condominium unit owners.").

The term "deed of trust" has been described and defined in various ways. *Black's Law Dictionary* defines deed of trust as "[a] deed conveying title to real property to a trustee as security until the grantor repays a loan," and it goes on to remark, "This type of deed resembles a mortgage." BLACK'S LAW DICTIONARY 445 (8th ed. 2004). One Texas court has described a deed of trust as follows:

> In this state we use a deed of trust in the nature of a mortgage in transfers of real property. Thereby a lien is retained or given as security, with simultaneous execution of a deed of trust to one who is to hold the office of trustee for the purpose of foreclosure without necessity of resort to litigation. The deed of trust transaction is a conveyance in trust by way of security, subject to a condition of defeasance, or redeemable at any time before the sale of the property. In other words it is a conveyance in trust for the purpose of securing a debt, subject to a condition of defeasance.

*Lucky Homes, Inc. v. Tarrant Sav. Ass'n*, 379 S.W.2d 386, 388 (Tex.Civ.App.-Fort Worth 1964), *rev'd on other grounds*, 390 S.W.2d 473 (Tex.1965). Texas courts have also described a deed of trust more simply as "a mortgage with power to sell on default." *Johnson v. Snell*, 504 S.W.2d 397, 399 (Tex.1973); *accord Starcrest Trust v. Berry*, 926 S.W.2d 343, 351 (Tex.App.-Austin 1996, no writ). Other cases focus on the nature of the conveyance effected by a deed of trust. *See Fin. Freedom Senior Funding Corp. v. Horrocks*, 294 S.W.3d 749, 755–56 (Tex.App.-Houston [14th Dist.] 2009, no pet.) ("[A] deed of trust creates only a lien on property and does not constitute a conveyance of the property."); *Wicker v. Tex. Bank of Garland, N.A.*, No. 05–94–01109–CV, 1995 WL 141152, at *3 (Tex.App.-Dallas Mar. 31, 1995, writ denied) (not designated for publication) ("[A] deed of trust or mortgage in Texas does not convey title to the property; it does, however, convey an interest in the property.").

We consider the terms of the Novastar security instrument in light of the foregoing discussion of deeds of trust. It is entitled "Texas Home Equity Security Instrument (First Lien)." The instrument names a trustee and recites that, for purposes of securing the debt evidenced by a specified note, "Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale," the condominium unit involved in this case. Section 21 of the instrument authorizes the lender to accelerate the debt in the event of default and to "invoke the power of sale" if the default is not cured. Section 21 also contains the following paragraph:

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.

Section 22, entitled "Power of Sale," sets forth the terms under which the trustee may sell the property in a foreclosure sale, such as the manner in which the trustee must give notice of the sale. Section 22 also recites, among other things, that "Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines," and that the trustee shall deliver a trustee's deed to the purchaser of the property.

■ Novastar's security instrument incorporates the main features of a deed of trust described above. The instrument evidences the lender's lien on the property, and it conveys the property to the trustee as security "in trust, with power of sale" in the event of the borrower's default on a particular note. It further grants the trustee the power to sell and convey the property in a foreclosure sale. Thus, it constitutes a "a mortgage with power to sell on default," *Johnson*, 504 S.W.2d at 399. There is ample authority in which appellate courts have referred to home-equity security instruments as "deeds of trust." *See U.S. Bank Nat'l Ass'n v. Free-*

*ney*, 266 S.W.3d 623, 624 (Tex.App.-Dallas 2008, no pet.) (referring to a lien instrument as "the 'Texas Home Equity Security Instrument (First Lien)' deed of trust"); *see also Schlichting v. Lehman Bros. Bank FSB*, 346 S.W.3d 196, 198 (Tex.App.-Dallas 2011, pet. filed) (reciting that "appellant executed a first lien and deed of trust to secure a home equity loan"); *Wells Fargo Bank, Nat'l Ass'n v. Erickson*, 267 S.W.3d 139, 141–42 (Tex.App.-Corpus Christi 2008, no pet.) (referring to "a home equity note and deed of trust lien"); *Burney v. Citigroup Global Mkts. Realty Corp.*, 244 S.W.3d 900, 901 (Tex.App.-Dallas 2008, no pet.) (reciting that a home-equity note was "secured by a deed of trust").

Riner argues that an essential element of a "deed of trust" is a power to sell the property at foreclosure without any judicial involvement. For support, Riner relies on a statement in *Lucky Homes* that a trustee under a deed of trust holds that office "for the purpose of foreclosure without necessity of resort to litigation." 379 S.W.2d at 388 (Tex.Civ.App.-Fort Worth 1964), *rev'd on other grounds*, 390 S.W.2d 473 (Tex.1965). Because Novastar's security instrument expressly provides that Novastar's lien "may be foreclosed upon only by a court order," Riner urges, the instrument is not a deed of trust.

*Lucky Homes* does not persuade us that a security instrument cannot be a "deed of trust" if it does not permit foreclosure without any resort to litigation. In *Lucky Homes*, a creditor foreclosed on a deed of trust and sued for the remaining deficiency on the debt. *Id.* at 387. After a trial, the trial judge withdrew the case from the jury and rendered judgment for the creditor as a matter of law, and the debtor appealed. *Id.* at 387, 390. The issue addressed by the court of civil appeals was not whether the security instrument constituted a "deed of trust," but whether the

evidence presented a fact issue as to the propriety of the foreclosure sale that required jury resolution. *Id.* at 389–90. The appellate court held that there was a fact issue and reversed the judgment. *Id.* at 390. The Texas Supreme Court disagreed, held that there was no genuine issue of material fact, and reinstated the judgment of the trial court. 390 S.W.2d at 474–76. In short, the question before us was never presented, much less resolved, in *Lucky Homes*.

■ We reject Riner's argument that the Novastar security instrument was not a deed of trust. Under Texas law, "[t]he maker of a deed of trust with power of sale may condition the exercise of the power upon such conditions as he may prescribe." *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 768 (Tex.1983). Moreover, the trustee must strictly comply with all the terms prescribed in the power of sale. *Id.; Stephenson v. LeBoeuf*, 16 S.W.3d 829, 836 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). From these principles it follows that a deed of trust does not lose its character as a deed of trust merely because its maker imposes conditions and limitations on the trustee's power of sale. In this case, Novastar's security instrument requires a court order as a condition for a foreclosure sale, as is constitutionally required for foreclosure on a home-equity loan on a homestead. *See* Tex. Const. art. XVI, § 50(a)(6)(D). Nevertheless, despite that condition (not to mention other conditions in the instrument governing the notice of the sale and the time and place of the sale), the Novastar security instrument still confers the power of sale upon the trustee. Accordingly, we conclude as a matter of law that the Novastar home-equity security instrument involved in this case was a "deed of trust" in the ordinary meaning of the term.

### 4. Judicial admission

■ Riner also makes a short argument that Neumann judicially admitted in his summary-judgment motion that Novastar's lien was invalid after the foreclosure sale of the property to Riner. Riner's argument is disingenuous and without merit. Neumann moved for summary judgment principally against Riner and alternatively against Novastar. As to Riner, Neumann argued that Novastar's lien was valid and superior to The Cedars' assessment lien. Neumann argued only in the alternative that he was entitled to summary judgment against Novastar because the assessment lien was superior to Novastar's lien. An alternative pleading cannot be used as a judicial admission. *Dallas Transit Co. v. Young*, 370 S.W.2d 6, 11 (Tex.Civ.App.-Dallas 1963, writ ref'd n.r.e.); *accord Havens v. Ayers*, 886 S.W.2d 506, 511 (Tex. App.-Houston [1st Dist.] 1994, no writ).

### 5. Conclusion

The summary-judgment evidence established that Novastar's security instrument was a "prior recorded deed of trust" within the meaning of The Cedars' condominium declaration's provisions governing lien priority. Accordingly, the trial judge properly ruled that Novastar's lien was superior to the homeowner's assessment lien through which Riner claimed title. We reject Riner's second issue on appeal.

### D. Evidence of damages

In his third issue on appeal, Riner argues that Neumann's evidence was inadequate to support the trial judge's award of $7,750 in damages. He contends that Neumann's affidavit in support of the award was conclusory and thus failed to establish Neumann's damages as a matter of law. Riner objected to Neumann's affidavit on this basis in the trial court, and the trial judge overruled the objection.

■ A conclusory statement is one that does not provide the underlying facts in support of the conclusion. *Schindler v. Baumann,* 272 S.W.3d 793, 796 (Tex.App.-Dallas 2008, no pet.). Conclusory statements in a summary-judgment affidavit are not competent evidence. *Id.* Thus, a conclusory statement in an affidavit can neither support nor defeat summary judgment. *James L. Gang & Assocs., Inc. v. Abbott Labs., Inc.,* 198 S.W.3d 434, 442 (Tex.App.-Dallas 2006, no pet.).

Neumann stated the following in an affidavit in support of his motion for summary judgment:

> 7. I currently manage three other units in the same condominium regime as the Property. I am responsible for the leasing of those three units. I have been involved in the management and rental of units in the same condominium regime as the Property since at the latest 1992. I am very familiar with the fair market rental value of units similar to the Property.

> 8. The fair market rental value of the Property is $775.00 per month based upon my experience of both owning and leasing out other units within this condominium regime.

Riner argues that Neumann's affidavit testimony as to the fair market rental value of the unit is conclusory because Neumann did not state what the rental rates are on his comparison units, because Neumann did not provide any of the material terms of the comparison leases, and because Neumann provided no information about the expenses involved in renting the units.

■ We reject Riner's argument. This case is somewhat similar to *Rivera v. White,* 234 S.W.3d 802 (Tex.App.-Texarkana 2007, no pet.). In that car-wreck case, the plaintiff won summary judgment. *Id.* at 804. Although the court of appeals reversed in part, it affirmed the award of property damage to the plaintiff and rejected an argument that her supporting affidavit was too conclusory. *Id.* at 807–08. The plaintiff testified by affidavit that her vehicle was "totaled" and that its fair market value at the time of the accident was $8,000. *Id.* at 805. The court of appeals held that this testimony was not conclusory because it contained some factual information and because an owner of property is ordinarily competent to testify to its fair market value. *Id.* at 808. Although Neumann's testimony concerned fair market rental value rather than fair market value, at least one court has held that a property owner is also ordinarily qualified to testify about the property's fair market rental value. *See A.G.E., Inc. v. Buford,* 105 S.W.3d 667, 677 (Tex.App.-Austin 2003, pet. denied); *cf. State v. Cent. Expressway Sign Assocs.,* 302 S.W.3d 866, 874 (Tex.2009) ("Under Texas law, an owner of property is qualified to testify to the property's market value."). Neumann's affidavit is otherwise comparable to the affidavit in *Rivera.*

Neumann's affidavit is also comparable to the one we approved in *Saronikos, Inc. v. City of Dallas,* 285 S.W.3d 512 (Tex. App.-Dallas 2009, no pet.). In that case, a question was presented as to how close a particular sexually oriented business was to a park and whether the park was available to the public. *See id.* at 514. The City filed a summary-judgment affidavit by a person who testified that she was a registered engineer, that she was the director of Dallas's Trinity River Corridor Project, and that the park in question was part of that project. *Id.* at 515. She also testified in her affidavit that the business was within 1,000 feet of the park and that the park was "open to pedestrians, cyclists, and horses." *Id.* We held that her affidavit was not conclusory because her conclusions were "supported by facts within her

personal knowledge and expertise." *Id.* at 517. Similarly, Neumann's affidavit demonstrates that he has personal knowledge and expertise regarding the rental market for condominiums in the relevant complex.

We conclude that Neumann's affidavit was not conclusory with respect to the fair market rental value of the condominium. Accordingly, we reject Riner's third issue on appeal.

## III. NEUMANN'S CROSS-APPEAL

Neumann raises a conditional issue in which he argues that the summary judgment in favor of Novastar should be reversed if the summary judgment against Riner is reversed. Because we affirm the judgment against Riner, we do not consider Neumann's conditional issue as to Novastar.

Neumann also raises one independent issue in his cross-appeal in which he complains about the trial judge's refusal to award him his attorney's fees. He acknowledges that attorneys' fees are ordinarily not recoverable in a suit for trespass to try title, but he urges us to adopt a rule that would allow him to recover his fees as a matter of equity. We decline to do so.

Texas has long followed the American Rule, under which attorney's fees paid to prosecute or defend a lawsuit cannot be recovered in that suit absent a statute or contract that allows for their recovery. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 120 (Tex.2009). There is a statutory scheme in place to govern trespass-to-try-title claims, *see generally* TEX. PROP.CODE ANN. §§ 22.001–.045 (West. 2000), but it contains no provision authorizing a party to recover attorney's fees from the opposing side. We have held that the plaintiff in a trespass-to-try-title suit cannot recover attorney's fees. *McAnally v. Friends of WCC, Inc.,* 113 S.W.3d 875, 881 (Tex.App.-Dallas 2003, no pet.); *see also Barfield v. Holland,* 844 S.W.2d 759, 771 (Tex.App.-Tyler 1992, writ denied) (trespass-to-try-title plaintiff could not recover attorney's fees by characterizing claim as one under Declaratory Judgments Act).

Neumann argues that we should recognize an equitable exception to the American Rule for the facts of this case. He points out that he was in possession of the premises at issue until he was forcibly dispossessed of it by Riner. But for Riner's wrongful act of self-help, Neumann argues, Neumann would have remained in possession of the premises and could have litigated the matter as a declaratory-judgment action instead of a trespass-to-try-title action. And under the Uniform Declaratory Judgments Act, Neumann would have been eligible to recover his attorney's fees. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (West 2008) (authorizing trial court to award fees "as are equitable and just"). Thus, Neumann contends that we should recognize an equitable right to recover attorney's fees on these egregious facts, or else Riner will benefit from his wrongful act.

We reject Neumann's argument. The American Rule has been a part of Texas jurisprudence for over 100 years. *See Akin, Gump,* 299 S.W.3d at 120 (tracing the Rule's roots in Texas jurisprudence to 1896). Moreover, the supreme court has stated that "[a]bsent a contract or statute, trial courts *do not have inherent authority* to require a losing party to pay the prevailing party's fees." *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 311 (Tex.2006) (emphasis added). Texas's only equitable exception to the American Rule that we are aware of is the common-fund doctrine, *see generally Allstate Ins. Co. v. Edminster,* 224 S.W.3d 456, 457–58 (Tex.App.-Dallas 2007, no pet.) (applying common-fund doctrine), which Neumann

acknowledges is not applicable to this case. Given the supreme court's faithful adherence to the American Rule, and its strong statement in *Tony Gullo* that trial courts lack the inherent authority to award attorney's fees contrary to the Rule, we decline to adopt a new equitable exception to the Rule. *Cf. Martin v. Clinical Pathology Labs., Inc.,* 343 S.W.3d 885, 892 (Tex.App.-Dallas 2011, pet. filed) (stating that Texas Supreme Court rather than intermediate court of appeals was proper tribunal to consider exceptions to state's strong employment-at-will doctrine).

We reject Neumann's issue on cross-appeal.

## IV. DISPOSITION

For the foregoing reasons, we affirm the judgment of the trial court.