LG INSURANCE MANAGEMENT SERVICES, L.P., LG Benefit Partners, Inc., Thomas J. George and Elizabeth W. Wilmer, Appellants/Cross–Appellees

v.

**Arvid LEICK, Appellee/Cross–Appellant.**

**No. 05–10–01646–CV.**

Court of Appeals of Texas, Dallas.

Aug. 28, 2012.

Rehearing Overruled Oct. 2, 2012.

Jack M. Kuykendall, Law Offices of Jack M. Kuykendall, Dallas, TX, for Appellant.

Douglas Bracken, Bennett, Weston, La-Jone & Turner, PC, Dallas, TX, for Appellee.

Before Justices MORRIS, MOSELEY, and MYERS.

## OPINION

Opinion By Justice MYERS.

LG Insurance Management Services, L.P., LG Benefit Partners, Inc., Thomas J. George, and Elizabeth W. Wilmer appeal the trial court's judgment against them and in favor of Arvid Leick following a jury trial. Appellants bring nine issues on appeal, including contentions that the trial court erred by (a) including an improper implied covenant to the parties' agreement in the jury charge; (b) not disregarding the jury's answer based on the implied covenant; and (c) awarding Leick his costs and attorney's fees. Leick brings one cross-point asserting the trial court erred by granting appellants' motion for instructed verdict on Leick's cause of action for breach of fiduciary duty seeking actual and exemplary damages. We reverse the trial court's award of actual damages, costs and attorney's fees, render judgment that Leick take nothing on his claims for actual damages, and remand the issue of costs and attorney's fees to the trial court for further proceedings.

## BACKGROUND

In 2004, Leick and George formed a limited partnership, LG Insurance Management Services L.P., to sell insurance. A corporation, LG Benefits Partners, Inc., was the general partner, and Leick and George were the limited partners and the shareholders of the corporation. In 2007, the partnership merged with Wilmer's insurance agency, and Wilmer was added as a limited partner and shareholder.

In June 2008, the limited partners and the general partner signed the Partners' Agreement containing provisions in the event a limited partner died or otherwise separated from the partnership, including provisions in the event a partner left the partnership for reasons other than death or disability. If a partner terminated his association with the partnership voluntarily, then the agreement required the departing partner to sell his interest to the partnership or other partners according to a formula set forth in the agreement. If a partner departed involuntarily, then the agreement provided that the partner relinquished his interest in the partnership on the day of his departure. The agreement provided that no payment to an involuntarily terminated partner was required;

however, the remaining partner or partners could decide that a payment be made to the involuntarily terminated partner.[1]

On October 3, 2008, George and Wilmer decided to terminate Leick's association with the partnership for a variety of reasons, including Leick's lack of business production. They met with Leick and told him they could not be partners with him anymore and that he was no longer going to be a partner. Leick left the office, and George went to the bank and changed the signature cards for the partnership's bank account. The next day, George went to Leick's house and picked up all the partnership checkbooks and financial matters Leick kept there. George and Wilmer let Leick come back to the office on October 6 and 7 to "finish up some loose ends on some clients and things like that."

On October 13, George and Wilmer offered to pay Leick the amount of money they believed he would be entitled to if he were departing voluntarily, which they calculated as $326,594.79. The next day, Leick rejected this amount, asserting George and Wilmer's calculations included improper deductions for commissions owed to other brokers and for a debt to Insurance Marketing Services (IMS).[2] Leick insisted he was entitled to $597,338.58 as a voluntarily terminated partner. On October 17, appellants, through their attorney, told Leick the deductions were appropriate, that he was not entitled to any amount under the Partners' Agreement because he was terminated involuntarily, offered him $313,962.21, and stated that if appellants were "forced to proceed further with this matter," then the offered amount would be reduced to $244,060.12.

1. The agreement stated Leick, George, and Wilmer were "referred to jointly as the 'Partners' and individually as the 'Partner.'" The agreement provided,

> Section 3.03 *Termination of Association with the Partnership.* If a Partner's association with the Partnership is completely terminated voluntarily, by reasons other than death or disability, the terminating Partner shall sell the Partnership interest to the Partnership and/or the other Partners according to the following terms.
>
> The formula for the calculation of this sum shall be a multiple of 1.65 of the recurring income of the [P]artnership divided by the number of total partners for the twelve months prior to the termination of association. The payment of the calculated amount shall be paid in monthly payments for a period of five (5) years starting after thirty (30) days after the date of termination. If a Partner[']s association with the Partnership is completely terminated involuntarily, no payment to the departing Partner is required, but if any payment is made to the departing Partner; then such amount shall be determined by the remaining [P]artners or [P]artner. The payment of the calculated amount shall be paid in monthly payments for a period of five (5) years start-

ing after thirty (30) days after the date of termination. The payment of the calculated amount may be paid in less than five (5) years at the discretion of the remaining [P]artners.

> The involuntarily departing Partner shall relinquish any and all interest in the Partnership effective the date of departing. In the event the interest is not relinquished to the Partnership, the Partnership interest of the involuntarily departing Partner shall automatically be relinquished to the Partnership ten (10) days after the date of departure, and any claim to or use of Partnership interest beyond the ten (10) day period shall be subject to all legal remedies available to the Partnership for any use, misrepresentation and/or claim of the involuntarily departing Partner to interest in, for and/or on behalf of the Partnership or any Partnership interests.

2. IMS was an insurance agency whose assets LG purchased. The debt to IMS was the remaining amount owing on the purchase. At the time of the purchase of IMS's assets, Leick and George were LG's only limited partners. Wilmer became a limited partner of LG after her insurance agency merged with LG, and she became a guarantor of the IMS debt.

On November 12, 2008, appellants filed suit against Leick seeking a declaratory judgment that Leick was involuntarily terminated and that the agreement did not require appellants to make any payment to Leick.[3] Leick answered and filed counterclaims, including claims for declaratory judgment, breach of contract, and breach of fiduciary duty. During the jury trial, the court granted appellants' motion for directed verdict on Leick's breach of fiduciary duty cause of action.

The jury determined that a preponderance of the evidence did not support finding that Leick voluntarily terminated his position before appellants involuntarily terminated him or that appellants failed to comply with the Partners' Agreement when they involuntarily terminated Leick. In jury question 4, the jury found that the amount that should have been paid to Leick under the Partners' Agreement as an involuntarily terminated partner was $326,594.79. The jury also determined the amount of the parties' attorney's fees.

The trial court's judgment awarded Leick $125,194.68 and ordered the partnership and the general partner to pay Leick "$5,443.247 [sic]" per month for thirty-seven months.[4] The court also awarded Leick his attorney's fees as determined by the jury.

## JURY CHARGE

■ In their first issue, appellants contend the trial court erred by submitting jury question 4 because it included an improper implied covenant not present in the parties' agreement. In their second issue, appellants contend the trial court erred by not disregarding the jury's answer to question 4.

■ The trial court is accorded broad discretion in formulating the charge "so long as the charge is legally correct." *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664 (Tex.1999). If an instruction is improper, we will reverse if it probably caused the rendition of an improper judgment. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex.2001); *Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 617 (Tex. App.-Dallas 2010, no pet.); *see also* TEX. R.APP. P. 44.1(a)(1).

In question 1, the jury was asked whether Leick voluntarily terminated his association with the partnership before being involuntarily terminated, and the jury answered "No." In question 3, the jurors were asked whether the partnership, George, and Wilmer "fail[ed] to comply with the Partners' Agreement in connection with the involuntary termination of Leick's association with" the partnership, and the jury answered "No."

---

**3.** Appellants' petition also included a claim for breach of fiduciary duty. Before trial, the court granted Leick's motion for summary judgment on appellants' claim for breach of fiduciary duty. Appellants appeal the granting of the motion for summary judgment on that claim, but only in the event that we overrule their first three issues. Because we sustain their first and second issues, we do not reach their issue concerning the summary judgment on their claim for breach of fiduciary duty. Appellants' petition also included a "Right of Contribution and/or Offset," which was a claim by George and Wilmer against Leick for his share of the amounts due on the guaranty of the IMS debt. The trial court

dismissed this claim as unripe because the primary obligor had not defaulted and Wilmer and George had not made any payments on the guaranty. Appellants do not present any issues on appeal concerning this cause of action.

**4.** It appears this award of damages and future payments was to comply with the provision in the Partners' Agreement that "[t]he payment of the calculated amount shall be paid in monthly payments for a period of five (5) years starting after thirty (30) days after the date of termination."

The jurors were instructed to answer question 4 only if they answered "no" to question 3. Question 4 asked the jury to determine the amount that should have been paid to Leick as an involuntarily terminated partner. The trial court instructed the jury as follows:

The Court has determined that, in deciding whether a payment would be made to a partner terminated involuntarily under Section 3.03 of the Partners' Agreement, and if so in what amount, the remaining partners were obligated to act fairly and reasonably toward the involuntarily terminated partner.

Appellants objected to this instruction, arguing that the instruction was contrary to the clear language of the contract, which left the determination of whether and how much to pay the involuntarily terminated partner in the sole discretion of the remaining partners. On appeal, appellants argue that the trial court's instruction inserted an implied covenant into the contract that was not supported by the terms of the contract.

When parties reduce their agreements to writing, the written instrument is presumed to embody their entire contract. *Danciger Oil & Ref. Co. of Tex. v. Powell,* 137 Tex. 484, 154 S.W.2d 632, 635 (1941). Courts do not rewrite contracts to insert provisions that the parties could have included, nor do courts imply restraints for which the parties did not bargain. *Tenneco Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 646 (Tex.1996); *Gamma Group, Inc. v. Transatlantic Reinsurance Co.,* 242 S.W.3d 203, 212 (Tex.App.-Dallas 2007, pet. denied). A court may not add to a contract under the guise of interpretation. *Gamma Group,* 242 S.W.3d at 212; *see CenterPoint Energy Hous. Elec. LLC v. Bluebonnet Drive, Ltd.,* 264 S.W.3d 381, 391 (Tex.App.-Houston [1st Dist.] 2008, pet. denied).

The court's jury instruction that the remaining partners were required to act fairly and reasonably toward an involuntarily terminated partner inserted an implied covenant into the contract. *See Gamma Group,* 242 S.W.3d at 212 (trial court's construction of contract as requiring loss payments be reasonable inserted implied covenant into contract). Implied covenants are not favored in Texas law. *In re Bass,* 113 S.W.3d 735, 743 (Tex.2003). Only in rare circumstances will a court imply a covenant in a contract. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.,* 121 S.W.3d 742, 747 (Tex.2003). A covenant will not be implied simply to make a contract "fair, wise, or just." *Id.; Gamma Group,* 242 S.W.3d at 212–13. A court will look beyond the written agreement to imply a covenant only if it is necessary to effectuate the parties intent as disclosed by the contract as a whole. *Universal Health,* 121 S.W.3d at 747–48; *Danciger,* 154 S.W.2d at 635; *Gamma Group,* 242 S.W.3d at 213. An "implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it...." *Universal Health,* 121 S.W.3d at 748 (quoting *Danciger,* 154 S.W.2d at 635).

Leick argues the instruction was proper because it set forth the law governing relations between partners, and contracts incorporate the law in effect at the time of the contract. *See City of Houston v. Williams,* 353 S.W.3d 128, 141 (Tex.2011). Leick asserts that the Texas Revised Partnership Act required partners to be fair and reasonable. *See* TEX.REV.CIV. STAT.

ANN. art. 6132b–4.04 (expired).[5] He also asserts that under Texas common law, the relationship between partners is fiduciary in character. *See Bohatch v. Butler & Binion*, 977 S.W.2d 543, 545 (Tex.1998). Therefore, Leick argues, even if the trial court implied a covenant between the parties to act fairly and reasonably in determining the amount of a terminated partner's payment, it was a proper implied covenant. We disagree.

Under the Partners' Agreement, Leick relinquished his partnership interest the day he was involuntarily terminated and departed from the partnership. George and Wilmer met with Leick on October 3, 2008 and told him he had to leave the partnership. The evidence shows Leick finished his business at the partnership office by October 7. On October 22, appellants' attorney wrote a letter to Leick's attorney stating, "your client cannot still be considered a partner if he was either voluntarily or involuntarily terminated no later than October 14, 2008." No evidence showed Leick remained a partner after October 14. Therefore, after October 14, when Leick had been involuntarily terminated, appellants did not have the heightened duty toward Leick set forth in the partnership act or in the common law. Any negotiations regarding payment to Leick before he was involuntarily terminated no longer mattered after his involuntary termination and departure because, at that point, under the Partners' Agreement, appellants did not owe him anything.

To the extent the Texas Revised Partnership Act may apply to the duties of limited partners, the partners' obligations under the partnership act were to act in good faith toward each other and in a manner they reasonably believed to be in the best interest of the partnership. *See* Tex.Rev.Civ. Stat. Ann. art. 6132b–4.04(d).[6] Under the partnership act, George, Wilmer, and LG Benefit Partners, Inc., as partners, owed each other and the partnership a duty of loyalty and a duty of care. *See id.* art. 6132b–4.04(a). Because Leick was no longer a partner after they terminated him and he departed, appellants did not owe him those duties.

The trial court's instruction imposed a duty on George, Wilmer, and the partnership that did not exist under common law, the partnership act, or the parties' contract, namely, the duty to act fairly and reasonably in determining whether and what amount to pay Leick as an involuntarily terminated partner. We conclude the trial court erred in imposing this implied covenant on the parties.

The improper instruction containing the implied covenant probably caused the rendition of an improper judgment because, without the court-imposed duty of acting fairly and reasonably toward Leick, the only requirement on the amount of the payment would have been that the amount, if any, be the amount that George and Wilmer, as "Partners" under the agreement, desired to pay to Leick. It was

---

5. *See* Act of May 31, 1993, 73rd Leg., R.S., ch. 917, § 1, sec. 4.04, 1993 Tex. Gen. Laws 3887, 3898 (expired Jan. 1, 2010) (now codified at Tex. Bus. Org.Code Ann. § 152.204 (West 2011)).

6. Section 4.04(d) of the Texas Revised Partnership Act provides:
   Method of Discharge. A partner shall discharge the partner's duties to the partnership and the other partners under this Act or under the partnership agreement, and exercise any rights and powers in the conduct or winding up of the partnership business:
   (1) in good faith; and
   (2) in a manner the partner reasonably believes to be in the best interest of the partnership.
   Tex.Rev.Civ. Stat. Ann. art. 6132b–4.04(d).

undisputed that at trial George and Wilmer desired to pay nothing to Leick.

Appellants argue that the trial court erred in not disregarding the jury's answer to question 4. Appellants argue that question 4 should never have been submitted and the jury would not have found any amount that should have been paid to Leick as an involuntarily terminated partner. We agree. The jury's answers of "No" to questions 1 and 3 meant Leick failed to prove either that his termination was voluntary or that his involuntary termination violated the Partners' Agreement. Because the agreement provided that an involuntarily terminated partner relinquishes his partnership interest when he departs, appellants had no heightened duty toward Leick under partnership law in determining what amount, if any, to pay him. Contrary to the trial court's instruction, appellants did not have a duty to act fairly and reasonably toward him. Because, under the Partners' Agreement, the amount to be paid to Leick was entirely within appellants' discretion, the trial court should have disregarded the jury's answer on the issue of the amount to be paid to Leick.

We sustain appellants' first and second issues, and we render judgment that Leick take nothing on his claims for actual damages against appellants. Having sustained appellants' first and second issues, we need not reach appellants' third issue or issues six through nine.[7]

## ATTORNEY'S FEES AND COSTS

■ In their fourth and fifth issues, appellants contend the trial court erred in awarding Leick his costs and attorney's fees under the Uniform Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.001–.011 (West 2008). Texas follows the "American Rule" for the award of attorney's fees, which prohibits the awarding of attorney's fees unless they are permitted by statute or contract. *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382 (Tex.2011); *Riner v. Neumann*, 353 S.W.3d 312, 322 (Tex. App.-Dallas 2011, no pet.). As for costs, rule 131 provides, "The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX.R. CIV. P. 131. Section 37.009 of the Civil Practice & Remedies Code provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id.* § 37.009.

■ Appellants argue Leick cannot recover attorney's fees under section 37.009 because his declaratory judgment claim sought the same relief as his breach of contract claim, and Leick cannot recover attorney's fees for his breach of contract claim under section 38.001 of the Civil Practice & Remedies Code. To recover attorney's fees for breach of contract under section 38.001, the party must prevail on its breach of contract claim and recover damages. *See* CIV. PRAC. & REM. § 38.001(8); *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex.2009). As discussed above, Leick has not prevailed on his breach of contract claim and he has not recovered damages;

---

**7.** Appellants' third issue contended the award of actual damages to Leick was not supported by the pleadings. Having sustained appellants' first two issues, the third issue is not necessary for disposition of the appeal. *See* TEX.R.APP. P. 47.1. Appellants' presented their sixth through ninth issues in the alternative in the event that we overruled their first three issues. Having sustained their first two issues, we do not address issues six through nine.

accordingly, he is not entitled to attorney's fees under that section.

In *MBM Financial Corp. v. Woodlands Operating Co., L.P.*, the Woodlands sued MBM for breach of contract, fraud, and declaratory judgment. *MBM Fin. Corp.*, 292 S.W.3d at 663. The Woodlands prevailed at trial recovering damages and attorney's fees. *Id.* The supreme court held there was no evidence to support an award of damages. *Id.* at 664–66. The court then held that attorney's fees may not be awarded in tort cases such as fraud and that the Woodlands could not recover attorney's fees under section 38.001 of the Civil Practice & Remedies Code because the Woodlands had not proved any damages on its breach of contract claim. *Id.* at 666–67. The court then concluded that the Woodlands could not recover attorney's fees for its declaratory judgment action:

> The Act was originally "intended as a speedy and effective remedy" for settling disputes before substantial damages were incurred. It is "intended to provide a remedy that is simpler and less harsh than coercive relief, if it appears that a declaration might terminate the potential controversy." But when a claim for declaratory relief is merely tacked onto a standard suit based on a matured breach of contract, allowing fees under Chapter 37 [of the Civil Practice & Remedies Code] would frustrate the limits Chapter 38 imposes on such fee recoveries. And granting fees under Chapter 37 when they are not permitted under the specific common-law or statutory claims involved would violate the rule that specific provisions should prevail over general ones. While the Legislature intended the Act to be remedial, it did not intend to supplant all other statutes and remedies.

> At trial, the Woodlands recovered no damages on its breach of contract claim,

so it cannot recover fees under Chapter 38. Allowing it to recover the same fees under Chapter 37 would frustrate the provisions and limitations of the neighboring chapter in the same Code. Accordingly, we hold the Woodlands cannot recover attorney's fees under the Declaratory Judgments Act.

*Id.* at 670.

■■■ *MBM Financial Corp.*, prohibits Leick from recovering attorney's fees on his own declaratory judgment action because it was "a claim for declaratory relief ... merely tacked onto a standard suit based on a matured breach of contract." Awarding Leick attorney's fees on his own declaratory judgment claim "would frustrate the provisions and limitations" of section 38.001. *See id.*

■■ Leick's counterclaim for declaratory judgment, however, was not the only, or the first, declaratory judgment claim in the litigation. This case began when appellants filed suit for declaratory judgment seeking a declaration "that the termination of Leick was involuntary and that there is therefore no required payment to Leick under the Agreement.... In the alternative, Plaintiffs seek a determination of the amount, if any, to be paid to [Leick] under the terms of the agreements between the parties." Under section 37.009, the trial court had authority to award attorney's fees to either side on appellants' declaratory judgment action. *MBM Fin. Corp.* at 669; *see* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009. Appellants do not explain why Leick's filing of counterclaims deprived the trial court of its authority to award attorney's fees based on appellants' suit for declaratory judgment. We conclude that *MBM Financial Corp.* does not prohibit the trial court from awarding Leick costs and attorney's fees under section 37.009 based on appellants' suit for declaratory judgment. *See U.S. Fid. & Guar. Co. v.*

*Coastal Ref. & Mktg., Inc.,* 369 S.W.3d 559, 571–72 (Tex.App.-Houston [14th Dist.] 2012, no pet.).

██ The trial court's award of costs and attorney's fees under section 37.009 must be "equitable and just." CIV. PRAC. & REM. § 37.009. A non-prevailing party may be awarded attorney's fees and costs. *Hartsell v. Town of Talty,* 130 S.W.3d 325, 329 (Tex.App.-Dallas 2004, pet. denied); *State Farm Lloyds v. C.M.W.,* 53 S.W.3d 877, 894–95 (Tex.App.-Dallas 2001, pet. denied). The trial court awarded attorney's fees to Leick who, at the time, was a prevailing party. The record does not clearly reflect the trial court's reason for awarding attorney's fees and costs to Leick, and the record does not indicate whether the award of attorney's fees and costs to Leick would be equitable and just in light of our judgment that Leick take nothing on his claims for damages. Accordingly, we reverse the portion of the judgment awarding costs and attorney's fees to Leick under section 37.009, and we remand that issue for further proceedings. *See C.M.W.,* 53 S.W.3d at 894–95. We sustain appellants' fourth and fifth issues.

## BREACH OF FIDUCIARY DUTY

Leick brings one cross issue, contending the trial court erred in granting appellants' motion for directed verdict on Leick's breach of fiduciary duty cause of action. The standard of review for a directed verdict is a legal sufficiency or "no evidence" standard of review. *Mauricio v. Castro,* 287 S.W.3d 476, 478 (Tex.App.-Dallas 2009, no pet.). In reviewing the legal sufficiency of the evidence, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See Flood v. Katz,* 294 S.W.3d 756, 762 (Tex.App.-Dallas 2009, pet. denied). We consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex. 2006) (per curiam) (quoting *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005)). A directed verdict is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983)).

██ The elements of a claim for breach of fiduciary duty are: (1) the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in either (a) an injury to the plaintiff; or (b) a benefit to the defendant. *Graham Mortg. Corp. v. Hall,* 307 S.W.3d 472, 479 (Tex.App.-Dallas 2010, no pet.); *Jones v. Blume,* 196 S.W.3d 440, 447 (Tex.App.-Dallas 2006, pet. denied). Leick argues (1) appellants owed him a fiduciary duty because they were partners in a limited partnership; (2) appellants breached their fiduciary duty to him by failing to pay him his interest's fair value and by making low offers which they continued to lower during the negotiations until they filed suit seeking a declaration they owed Leick nothing; and (3) appellants' breach resulted in (a) Leick losing all value in his partnership interest and (b)

appellants' gaining Leick's partnership interest for nothing.

Leick asserts appellants owed him a fiduciary duty because he was a partner in a limited partnership. Even if appellants may have owed Leick a fiduciary duty before he was terminated,[8] the Partners' Agreement made clear that Leick relinquished his partnership interest when he was terminated and departed, which the evidence shows occurred no later than October 14. After that date, appellants owed no fiduciary duty to Leick as a partner.

■ Leick alleged appellants breached their fiduciary duties "by failing to pay fair value for Leick's Partnership Interest." On November 12, 2008, when appellants filed their suit for declaratory judgment seeking a declaration that Leick's termination was involuntary and there was no required payment under the Partners' Agreement, Leick was no longer a partner. Therefore, appellants had no fiduciary duty toward Leick as a partner when they decided to make no payment to him.

Leick argues on appeal that he presented more than a scintilla of evidence of breach of fiduciary duty through evidence that Wilmer and George conspired behind his back to take his partnership interest by terminating him involuntarily, that they failed to negotiate with him in good faith about the value of his partnership interest, and that they admitted the partnership was funding the lawsuit against Leick with the money Leick otherwise would have received from his interest in the partnership.

■ "The fiduciary duty that partners owe one another does not encompass a duty to remain partners or else answer in tort damages." *Bohatch*, 977 S.W.2d at 546. The evidence Leick cites for his conspiracy assertion was e-mails between Wilmer and George and George's wife concerning whether the firm would continue with the same partners and whether an employee of the agency would buy Leick's partnership interest from Leick. Under the Partners' Agreement, Wilmer and George had the right to involuntarily terminate Leick, and as the supreme court explained in *Bohatch*, Wilmer and George had no fiduciary duty to remain partners with Leick. Leick asserts that Wilmer and George did not discuss the separation with him before they terminated him. However, Leick does not explain or cite authority showing why Wilmer and George had a duty to do so.

■ Leick also argues that appellants violated their fiduciary duty to him when they "drove down the offered valuation for his partnership interest, rather than negotiate in good faith." Their offers on Octo-

8. Texas law is not clear whether limited partners owe each other fiduciary duties. See *McBeth v. Carpenter*, 565 F.3d 171, 177–78 (5th Cir.2009) (Texas law makes no distinction between fiduciary duties of general and limited partners); *Strebel v. Wimberly*, 371 S.W.3d 267, 279–80 (Tex.App.-Houston [1st Dist.] 2012, pet. filed) (status as limited partner does not create fiduciary duty, but additional relationship, such as agent or employee, may create fiduciary duties); *Zinda v. McCann St., Ltd.*, 178 S.W.3d 883, 890–91 (Tex.App.-Texarkana 2005, pet. denied) (limited partners owe fiduciary duties to one another); *AON Props., Inc. v. Riveraine Corp.*, No. 14–96–00229–CV, 1999 WL 12739, *23 (Tex. App.-Houston [14th Dist.] Jan. 14, 1999, no pet.) (not designated for publication) (no fiduciary duties between limited partners unless limited partner participates in the operation of the business so as to create duties that otherwise would not exist); *Crawford v. Ancira*, No. 04–96–00078–CV, 1997 WL 214835, *5 (Tex.App.-San Antonio Apr. 30, 1997, no writ) (not designated for publication) (no fiduciary duties between limited partners). We make no determination in this case whether the limited partners owed each other fiduciary duties.

ber 17, 2008 reducing the payment to Leick to $313,962.21 and threatening to reduce it to $244,060.12 did not breach any fiduciary duty to Leick as a partner because Leick had been involuntarily terminated at that time and was no longer a partner. Likewise, appellants' refusal to pay Leick anything contained in their November 12, 2008 suit for declaratory judgment did not violate any fiduciary duty to Leick as a partner because, at that time, Leick was no longer a partner. To the extent appellants' offer to Leick on October 13, 2008 to pay Leick $326,594.79 may have occurred before Leick's involuntary termination and may have breached a fiduciary duty to Leick, any breach could not have caused Leick damages because he was subsequently terminated involuntarily, relinquished his partnership interest, and, under the Partners' Agreement, appellants were not required to make any payment to him.

Leick also argues that appellants violated their fiduciary duty to him by funding the lawsuit with the profits Leick would otherwise have received.[9] However, when they filed the lawsuit and thereafter, Leick was no longer a partner and had relinquished his partnership interest. Even if appellants had not brought this lawsuit, Leick would not have been entitled to the profits appellants paid to their attorney.

We conclude Leick has not shown the trial court erred in granting appellants' motion for directed verdict on his counterclaim for breach of fiduciary duty. We overrule Leick's cross issue.

## CONCLUSION

We reverse the trial court's award of actual damages to Leick, and we render judgment that Leick take nothing on his claims for actual damages from appellants. We reverse the trial court's award of attorney's fees and costs to Leick, and we remand the issue of attorney's fees and costs to the trial court for further proceedings. In all other respects, we affirm the trial court's judgment.

---

9. Wilmer testified that with Leick out of the partnership, the profits were divided between her and George. Wilmer stated she was not receiving any more money from the partnership because the one-third of profits that would have gone to Leick were paid to their attorney.