**Affirmed and Opinion Filed August 18, 2022.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-20-00443-CV

_____

## COURTNEY RENEE SILVA, Appellant
## V.
## MILAGROZ DIAZ, Appellee

**On Appeal from the County Court at Law No. 5
Dallas County, Texas
Trial Court Cause No. CC-17-05855-D**

## MEMORANDUM OPINION

Before Justices Osborne and Partida-Kipness[1]
Opinion by Justice Partida-Kipness

Courtney Silva appeals the trial court's judgment in this personal injury suit arising from an automobile accident. The trial court directed a verdict as to Silva's liability, and the jury awarded Milagroz Diaz[2] damages in the amount of $204,235, plus costs and interest. In her sole issue, Silva contends the trial court erred in denying her Motion for New Trial or, in the alternative, Motion to Disregard Jury's

---

[1] Justice Schenck was a member of the panel at the time of submission. Justice Schenck voluntarily recused himself following the submission of the case. The remaining panel members have decided the case pursuant to Rule 41.1(b) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 41.1(b).

[2] Appellee is now known as Mimi Webb, but is referred to as Milagroz Diaz in the trial court's judgment. We will refer to her as Diaz in this opinion to avoid any confusion.

Findings or Motion to Modify the Judgment (the post-judgment motion). Silva maintains the post-judgment motion should have been granted because the judgment resulted from the trial court's erroneous exclusion of evidence and admission of improper evidence. Silva also challenges the trial court's directed verdict on liability. Finding no error, we affirm.

## BACKGROUND

On May 2, 2016, at approximately 5:00 p.m., a vehicle operated by Silva collided with a vehicle in which Diaz was a passenger (the forward vehicle). Prior to the collision, Silva's vehicle was stopped at a red traffic signal behind the forward vehicle. On November 3, 2017, Diaz filed suit against Silva claiming she suffered physical injuries as a result of the collision.[3] Silva answered and generally denied Diaz's assertions. Silva did not assert any affirmative defenses, identify anyone else as having caused or contributed to the accident, or disclose any legal theories, defenses, or potentially responsible third parties in response to a request for Rule 194.2 disclosures.

The trial court conducted a pretrial conference immediately before the parties' opening statements. At that time, the trial court ruled on the admissibility of certain evidence. Silva moved to admit post-accident photographs of the vehicles to show that damage to the vehicles was either very minor or non-existent. The court ruled the photographs inadmissible without testimony from a biomechanical engineer or

---

[3] The driver of the forward vehicle also sued Silva but settled her claim against Silva before trial.

accident reconstructionist establishing a nexus between the collision and the claimed injuries. In addition, the trial court admitted various medical and billing records over Silva's objection.

The court also considered Diaz's motion in limine, which sought, in part, to preclude Silva from suggesting the acts or omissions of any non-party caused or contributed to Diaz's damages. Diaz maintained Silva should be barred from making such arguments at trial because no affirmative defenses had been asserted and no persons had been designated as responsible third parties. During the pretrial conference, counsel for Silva represented that Silva was not going to blame Diaz or the driver of the forward vehicle for having caused or contributed to the collision. Silva's counsel indicated Silva's testimony would correspond with the following interrogatory response describing how the collision occurred:

> We were all stopped at a red light in the left turn lane. The car in front started going and then stopped. I was close and bumped her car.

Counsel further argued Silva's testimony would support an inferential rebuttal defense of sudden emergency that Silva contended did not need to be pleaded prior to trial.

After an extensive discussion, the trial court ruled Silva could testify about "objective facts" such as "how many cars behind she was following or what the length -- the distance between her and the other car." She was barred, however, from testifying in a way that would place blame on the driver ahead of her:

> So to the extent that she can talk about objective facts, what she was doing and what she saw, that would be fine, but to the extent that she's going to go into why or why not a car -- the car ahead of her did something or any of her opinions about why the car stopped, I'm not going to allow that.

The trial court further stated Silva could not testify "about it being an unavoidable accident or sudden emergency or it came out of nowhere." The trial court reasoned that by "using the words such as 'sudden' or 'unavoidable' or 'came out of nowhere,' I think that we're . . . assessing some form of blame to the driver ahead of her." The court then instructed that when Silva testifies:

> she refrain[] from addressing the [sic] why she believes the driver in front of her suddenly stopped, for her to avoid the word "sudden," "unavoidable," "unexpected," what she believes caused that driver stopping, but she certainly can address the fact that she was following at a certain length and that the car stopped.

Trial then commenced before a jury. The jury heard testimony from Diaz, Silva, Diaz's husband, and Diaz's expert on causation and future anticipated medical needs and expenses.

At trial, Diaz testified the vehicle in which she was a passenger was stopped at a red light when the vehicle driven by Silva hit them. At that time, there were other cars in front of them. Once the light turned green, they proceeded to a nearby parking lot. She overheard Silva tell the driver of the forward vehicle she was sorry and she had a baby crying in the back. Diaz asked Silva if the baby was okay, and Silva responded that she was fine. Diaz recalled she started feeling pain in her neck,

head, and back, and her hands started to tingle and became numb later that night. She sought medical attention from a chiropractor four days later.

Silva recalled that prior to the collision she was stopped at the intersection of Greenville and Walnut Hill in the left turn lane. She was less than a car length behind the car in front of her. Silva testified "maybe two" cars were in front of her. Silva's one- and five-year-old daughters were secured in their car seats in the back seat. Silva testified:

> We were stopped at a stop -- yeah, a stoplight and there was a car behind me. We were bumper to bumper. They started going, and then I started going and stopped, and then I bumped into the back of them.

When asked by her counsel, "Now, you said you bumped into the car in front of you. Could you describe that impact? Was it minor or medium?" she responded, "It was minor. My children didn't even know anything happened." When asked, "And were you able to see the damages to your car?" she responded, "The minor ones, yes." Although Silva recalled the other driver saying she called the police, Silva testified no police officer, ambulance, or fire truck came to the scene, and no tow trucks were called. On cross-examination, the following exchange occurred between Diaz's counsel and Silva:

> Q.    You would agree with me that there were no conditions on the roadway that contributed to this collision, correct?
>
> A.    Yes, sir.
>
> Q.    You would agree with me that there were no weather conditions that contributed to this collision, correct?

A.     Yes, sir.

Q.     You would agree with me that nothing obstructed your forward view of the vehicle in front of you immediately prior to you coming into contact with the rear of the vehicle, correct?

A.     Yes, sir.

* * *

Q.     You would agree with me that you do not contend that this collision was unavoidable?

A.     Correct.

* * *

Q.     You would agree with me that you have not -- you or your attorneys have not alleged in the last three and a half years that any person has caused or contributed to the harm sustained by my client, correct?

A.     Correct.

After both parties rested, Diaz moved for a directed verdict as to Silva's negligence. After lengthy arguments from counsel and discussion, the trial court granted the motion for directed verdict. Silva then made an offer of proof, outside the presence of the jury, with respect to her claimed inferential rebuttal defense of sudden emergency and the physical damage to the vehicles. Following a charge conference, the trial court read the charge to the jury, counsel presented closing arguments, and the jury retired to deliberate. The jury then returned its verdict on damages.

On January 9, 2020, the trial court signed a final judgment against Silva awarding the damages found by the jury.[4] On February 10, 2020, Silva filed the post-judgment motion, which was overruled by operation of law. TEX. R. CIV. P. 329b(d). Silva filed a notice of appeal on April 8, 2020.

## STANDARD OF REVIEW

In urging the trial court erred in denying her post-judgment motion, Silva challenges the trial court's rulings on several evidentiary matters. We review a trial court's exclusion of evidence under the abuse of discretion standard. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). The admission of expert testimony is also reviewed for abuse of discretion. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We must uphold a trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). If a trial court abuses its discretion and erroneously excludes evidence, we will reverse the judgment only if the exclusion of the evidence probably caused the rendition of an improper judgment. TEX. R. APP. P. 81(b); *Bridges v. City of Richardson*, 354 S.W.2d 366, 368 (Tex. 1962).

---

[4] The final judgment awards Diaz $204,235, which is comprised of $16,235 for past medical expenses, $88,000 for future medical expenses, $6,000 for past physical pain suffered, $44,000 for future physical pain, $6,000 for past physical impairment, and $44,000 for future physical impairment.

Silva also complains the evidence was legally and factually insufficient to support the jury's award of past and future medical expenses. "When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding." *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). We view the evidence in the light most favorable to the fact finding, indulging every reasonable inference that would support it and disregarding contrary evidence unless a reasonable factfinder could not. *Bos v. Smith*, 556 S.W.3d 293, 300 (Tex. 2018). "When reviewing the record, we determine whether any evidence supports the challenged finding." *Fulgham*, 349 S.W.3d at 157. "If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails." *Id.*; *see Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions"). We defer to the trial court's fact findings if they are supported by legally sufficient evidence. *Bos*, 556 S.W.3d at 300.

To establish a lack of factually sufficient evidence, appellants must demonstrate the finding is against the great weight and preponderance of the evidence presented at trial. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). "The court of appeals must consider and weigh all of the evidence, and can

set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* "Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony." *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). Jurors "may choose to believe one witness and disbelieve another." *Id.* As it is the jurors' role to resolve conflicts in the evidence, our review assumes that they did so in a manner consistent with their verdict. *Id.* at 820; *Capcor at KirbyMain, L.L.C. v. Moody Nat'l Kirby Houston S, L.L.C.*, 509 S.W.3d 379, 384–85 (Tex. App.— Houston [1st Dist.] 2014, no pet.).

Finally, Silva challenges the trial court's directed verdict on liability. The standard of review for a ruling on a motion for directed verdict is a legal sufficiency or "no evidence" standard of review. *L.G. Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632, 642 (Tex. App.—Dallas 2012, pet. denied). In reviewing the legal sufficiency of the evidence, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Id.* We consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam) (quoting *City of Keller*, 168 S.W.3d at 823). A directed verdict is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc.*, 118 S.W.3d at 751.

**ANALYSIS**

Silva contends the trial court should have granted the post-judgment motion and asserts four categories of alleged error: (1) exclusion of certain evidence, (2) admission of certain damages evidence, (3) granting directed verdict as to liability, and (4) legally and factually insufficient evidence to support the jury's awards of past and future medical expenses. We will first address Silva's evidentiary challenges, then we will address her sufficiency issues, and finally we will address her challenge of the directed verdict.

## I. Evidentiary challenges

### A. Exclusion of evidence

Silva first argues the trial court abused its discretion by excluding her testimony that the forward vehicle stopped "suddenly,"[5] her testimony the vehicles suffered insignificant damage following the accident, and post-accident photographs of the vehicles. According to Silva, her proffered testimony that the vehicle in front of her stopped "suddenly" is evidence of a sudden emergency and was admissible under Texas Rule of Evidence 701 because she was simply describing her perception of the accident as it occurred. *See* TEX. R. EVID. 701(a) (lay witness testimony in form of opinion is limited to one rationally based on witness's perception); *see also Goggans v. Ford*, No. 05-14-01239-CV, 2015 WL 8523302, at *6 (Tex. App.—

---

[5] Silva also contends on appeal that she was precluded from testifying "that just prior to the accident her foot merely came off the brake for a moment and that she never hit the accelerator and her vehicle simply jumped ahead." The record does not demonstrate that she was precluded from so testifying. Rather, Silva did not offer this testimony until she made her offer of proof.

Dallas Dec. 9, 2015, pet. denied) (mem. op.) (citing *Dillard v. Tex. Elec. Co–op.*, 157 S.W.3d 429, 432 (Tex. 2005) (sudden emergency is inferential rebuttal defense)). It is undisputed Diaz served Silva with a Rule 194.2 request for disclosure, which requires disclosure of the name of any potential parties, Silva's legal theories, the factual bases of her claims or defenses, and the name of any person who may be designated as a responsible third party. *See* TEX. R. CIV. P. 194.2(b)(2)(3)(12). Silva did not disclose her "sudden emergency" theory, which the trial court concluded attempted to place the blame on the other driver.

A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed unless the court finds that there was good cause for the failure to timely make, amend, or supplement the discovery response, or the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties. TEX. R. CIV. P. 193.6(a). The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence. TEX. R. CIV. P. 193.6(b).

We conclude the trial court did not abuse its discretion in concluding Silva had an obligation to disclose her "sudden emergency" defensive theory. In the absence of such disclosure, Silva had the burden of establishing good cause or the lack of unfair surprise or prejudice. She did not meet that burden. Accordingly, we

–11–

conclude the trial court did not abuse its discretion in prohibiting testimony Silva contends is evidence of a sudden emergency. *See Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 882 (Tex. 2009).

Moreover, notwithstanding the trial court's instruction that Silva refrain from using the term "sudden" in describing the accident, Silva was permitted to testify consistently with the description she gave in her interrogatory responses concerning how the collision occurred, including testifying about the distance between the vehicles and that the car in front of her began to move and then stopped. Silva was, therefore, effectively permitted to testify to her perception of how the accident occurred.

With respect to Silva's assertion that she was prohibited from testifying regarding the lack of damage to her vehicle, the record shows appellant testified the damage was "minor," she "bumped" the car in front of her, and her children did not know anything had happened. Again, contrary to her assertion, Silva was allowed to convey to the jury that the accident produced little physical damage to her vehicle.

As for the post-accident photographs of the vehicles, the trial court's decision to admit or exclude the photographs was left to the sound discretion of the trial court. *Roberson v. Collins*, 221 S.W.3d 239, 243 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We must uphold a trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Silva contends the photographs were relevant to the issue of liability.

Evidence has relevance if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. TEX. R. EVID. 401. The trial court has discretion to exclude relevant evidence when the evidence's probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. TEX. R. EVID. 403.

After Silva settled the claim of the driver of the forward vehicle, property damage was no longer an issue. Silva does not explain or establish how the photographs could conceivably relate to whether she exercised reasonable care in operating her vehicle at the time in question. It is apparent, as the trial court determined, that Silva sought to admit the photographs in the hope of calling the extent of Diaz's claimed injuries into doubt. The trial court excluded the photographs due to its belief that without a biomechanical or an accident reconstruction expert to tie the visible physical damage to the vehicle to the force created on impact, the photographs would provide little guidance and might confuse or mislead the jury. On the record before us, we conclude Silva has not shown the trial court abused its discretion in excluding the photographs. *See, e.g., Goggans*, 2015 WL 8523302, at *6 (no abuse of discretion in exclusion of photographs showing damage to vehicles).

B. **Admission of damages evidence**

Next, Silva asserts the trial court's judgment is improper because Diaz's evidence regarding her alleged injuries should not have been admitted and failed to

support the judgment. Specifically, Silva takes issue with Diaz's medical records and billing statements and the expert testimony of Dr. Garzillo.

### 1. Medical records and billing statements

First, Silva contends the medical and billing records admitted into evidence should have been excluded because the supporting affidavits failed to substantially comply with the requirements of sections 18.001 and 18.002 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 18.001[6]. We disagree.

Under Texas law, a party seeking to recover its past medical expenses must prove that the amounts paid or incurred are reasonable. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 876 (Tex. 2021) (orig. proceeding) (citing *Dall. Ry. & Terminal Co. v. Gossett*, 156 Tex. 252, 294 S.W.2d 377, 383 (1956) ("[R]ecovery of [past medical] expenses will be denied in the absence of evidence showing that the charges are reasonable."); *see also* TEX. CIV. PRAC. & REM. CODE § 41.0105 (limiting the recovery of incurred medical expenses to the amount "actually paid or incurred by or on behalf of the claimant"). A plaintiff can prove reasonableness and necessity of past medical expenses through (1) expert testimony on the issues of reasonableness and necessity or (2) an affidavit prepared and filed in compliance with section

---

[6] All references to section 18.001 are to the version in effect before the 2019 amendments. In 2019, section 18.001 was amended to state that neither the initial affidavits nor the counteraffidavits constitute evidence regarding causation. Act of May 20, 2019, 86th Leg., R.S., ch. 779, § 1, 2019 Tex. Sess. Law Serv. 2210, 2210–12 (amending TEX. CIV. PRAC. & REM. CODE § 18.001). The 2019 amendments also modified the deadlines for filing affidavits. *Id.* Because these amendments apply only to actions commenced after September 1, 2019, *id.* § 2, they do not apply to this case.

18.001. *Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 840 (Tex. 1997). Section 18.001 provides claimants with a procedure by which they can rely on an affidavit setting forth the necessity and reasonableness of medical expenses and avoid presenting expert testimony on those issues at trial. *In re Allstate Indem. Co.*, 622 S.W.3d at 881; *see Hong v. Bennett*, 209 S.W.3d 795, 801 (Tex. App.—Fort Worth 2006, no pet.) ("Without a section 18.001(b) affidavit . . ., a plaintiff must prove the reasonableness and necessity of [medical] expenses by expert testimony.").

Section 18.001 is a "purely procedural statute" designed to "streamline proof of the reasonableness and necessity of medical expenses." *In re Allstate Indem. Co.*, 622 S.W.3d at 881 (quoting *Haygood v. De Escabedo*, 356 S.W.3d 390, 397 (Tex. 2011)). Unless a controverting affidavit is served as provided by statute, "an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary." TEX. CIV. PRAC. & REM. CODE § 18.001(b). A counter affidavit must give reasonable notice of the basis on which the party serving it intends at trial to controvert the claim reflected by the initial affidavit. *Id.* § 18.001(f).

Pursuant to section 18.001, Diaz served affidavits setting forth the cost and necessity of medical services provided to her. Silva served a controverting affidavit.

Diaz objected to and moved to strike Silva's controverting affidavit because it did not give reasonable notice of the basis on which Silva intended to controvert the claims reflected by the initial affidavits. The trial court granted Diaz's motion and struck Silva's counter affidavit. Silva does not challenge that ruling on appeal. Instead, she directly challenges the affidavits and records of three providers.

### a. Affidavits and records from LBJ Pain and Injury Center

Silva begins by arguing the "affidavits from LBJ Pain and Injury Center are improper and fail to meet the requirements of" sections 18.001 and 18.002. Silva maintains the affidavits do not substantially comply with section 18.001(c)(2) because the affidavit states the records custodian and the attached records are from DFW P&I Center, not LBJ Pain and Injury Center. Section 18.001(c)(2) provides that the affidavit must:

> (2) be made by:
>
> > (A) the person who provided the service; or
>
> > (B) the person in charge of records showing the service provided and charge made.

TEX. CIV. PRAC. & REM. CODE § 18.001(c)(2).

Here, Diaz presented two affidavits from records custodian Heaven Rubio; both are titled "Affidavit of Custodian of Billing/Business Records for LBJ Pain and Injury Center." Attached to each affidavit are records from LBJ Pain & Injury Center. Those records include a patient account ledger for Diaz, billing records

showing diagnosis codes, treatment codes, and charges related to treatment provided by John Armitage, D.C., Dr. Armitage's initial report and discharge report, and provider exam, assessment, and treatment forms. Medical records from Coast to Coast Radiology Consulting were also attached to the second affidavit. Those records are addressed to Dr. Armitage at LBJ Pain & Injury.

At trial and on appeal, Silva asserts these affidavits were not properly admitted because they state the charges were incurred on behalf of DFW P & I Centers, not LBJ Pain and Injury Center, and identified Rubio as the records custodian for DFW P & I Centers, not LBJ Pain and Injury Center. According to Silva, these alleged defects caused the affidavit to fail to substantially comply with sections 18.001 and 18.002. Counsel for Diaz represented that LBJ Pain and Injury Center changed its name to DFW P & I Centers after Diaz received her treatments. The trial court overruled Silva's objections.

The affidavits reference LBJ Pain and Injury Center, as do the records attached to each affidavit. Although Rubio is the custodian of records for DFW P&I Centers and the affidavit provides the records show expenses incurred "on behalf of DFW P&I Centers," the reference to two entities does not render the affidavit inconsistent or defective. As the Texas Supreme Court noted in *Gunn v. McCoy*, "the plain language of section 18.001(c)(2)(B) does not require that affidavits be made by a records custodian *for a medical provider*." 554 S.W.3d 645, 672 (Tex. 2018) (emphasis in original) (concluding affidavits of subrogation agents were proper and

constituted legally sufficient evidence of the reasonableness and necessity of past medical fees). Here, Diaz's counsel provided a reasonable explanation for why the records custodian had a different name than the provider. Silva was free to point out the difference in the names and call the custodian of records to testify at trial in order to cast doubt on the records, but she chose not to do so. Further, the affidavits substantially complied with section 18.001 and 18.002 in form and substance. *See* TEX. CIV. PRAC. & REM. CODE §§ 18.001, 18.002(b-1), 18.002(c). Moreover, the affidavits were properly admitted as business records affidavits because they substantially complied with the requirements of rule 902(10). *See* TEX. R. EVID. 902(10). Under these circumstances we cannot conclude the trial court abused its discretion in admitting the affidavits concerning the records of LBJ Pain and Injury Center. We overrule Silva's objections.

Next, Silva argues the records fail to comply with section 18.001(c)(3) because they do not "include an itemized statement of the service and charge." TEX. CIV. PRAC. & REM. CODE § 18.001(c)(3) (the affidavit must "include an itemized statement of the service and charge."). She contends the records only list codes and amounts without an itemized description of the services rendered. We disagree. The records include a multi-page account ledger showing a total of $8,807.00 incurred, billing records separating each charge by date of service and procedure code, an initial report and discharge report describing the treatment and services provided to Diaz with the diagnosis codes, and daily therapy forms showing the treatments

provided to Diaz at each provider visit. We conclude the records meet the requirements of section 18.001(c)(3).

Accordingly, the trial court did not abuse its discretion in overruling Silva's objections to the affidavits and records related to LBJ Pain and Injury or in admitting the affidavits and records into evidence.

### b. Business Record Affidavit of DFW Diagnostics

Silva next challenges one of the affidavits from DFW Diagnostics. She contends the affidavit is improper and fails to meet the requirements of sections 18.001 and 18.002 because the records attached to the affidavit are not from DFW Diagnostics. Rather, the attached records are from Coast to Coast Radiology Consulting. At trial, counsel for Diaz argued the affidavits met the requirements of sections 18.001 and 18.002 because medical providers often incorporate records from other facilities into their own records. *See*, *e.g.*, *Savoy v. Nat'l Collegiate Student Loan Trust 2005-3*, 557 S.W.3d 825, 831–32 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (document authored or created by third party may be admissible as business records of different business). The records attached to the DFW Diagnostic affidavit were admitted into evidence without objection with the business records affidavit from Coast to Coast Radiology Consulting. We, therefore, need not determine whether the records were properly incorporated into DFW Diagnostic's records or whether the trial court abused its discretion in admitting the business records affidavit of DFW Diagnostics. *See City of Austin v. Hous. Lighting & Power*

–19–

*Co.*, 844 S.W.2d 773, 792 (Tex. App.—Dallas 1992, writ denied) (any error is harmless when evidence is cumulative of other evidence admitted without objection). We overrule this issue.

### c.      Records from JTP Diagnostics

Finally, Silva contends the records from JTP Diagnostics are "improper and fail to meet the requirements of" sections 18.001 and 18.002 because the records are attached to affidavits from Prime Diagnostic Imaging, a different provider. Silva further argues the inclusion of records from another provider renders the affidavit "no longer proper because the affiant can no longer provide sworn testimony" of the reasonableness and necessity of the services provided. We disagree.

First, we note Silva did not challenge this affidavit and its attached records by counter affidavit. The trial court, therefore, did not abuse its discretion in admitting same. *See* TEX. CIV. PRAC. & REM. CODE § 18.001(b). Further, the content of the affidavit and records are consistent. The affidavit states the charges totaled $4,666.00, and were for services provided to Diaz on May 31, 2016, to June 15, 2016. The records attached were retrieved on June 24, 2019, the date the affidavit was signed, for imaging done on May 31, 2016, to June 15, 2016, and reflect a total charge of $4,666.00. Moreover, as noted by the trial court, the record established that Prime Diagnostic Imaging and JTP Diagnostic, LLC share the same physical address. Silva did not challenge these charges by a counter affidavit or by pursuing discovery into whether Prime Diagnostic Imaging succeeded to JTP Diagnostics,

–20–

LLC or was otherwise affiliated. The affidavits substantially complied with section 18.001 and 18.002 in form and substance. *See* TEX. CIV. PRAC. & REM. CODE §§ 18.001, 18.002(b-1), 18.002(c). Accordingly, we conclude the trial court did not abuse its discretion in admitting this section 18.001 affidavit into evidence.

### 2. Expert testimony

Next, Silva contends Diaz's expert, Dr. Garzillo, was not qualified to testify about whether Diaz will require further medical care and the projected costs of such care. We review a trial court's decision to admit expert testimony for an abuse of discretion. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

Before Dr. Garzillo testified at trial, Silva asserted he should not be permitted to testify because he was not one of Diaz's treating physicians, and his opinions were irrelevant because they were made after the treatment dates. The trial court overruled Diaz's objections, and Dr. Garzillo proceeded to testify. During direct examination, Silva's counsel objected to Dr. Garzillo testifying about what was contained in the reports of other radiologists. She argued Dr. Garzillo was not qualified to discuss the radiologists' findings. The trial court overruled this objection as well.

As an initial matter, we note Dr. Garzillo's written plan of anticipated future medical expenses, along with a narrative report of prognosis, was admitted into evidence without objection. Thus, Silva waived any objection to the contents of the report. TEX. R. APP. P. 33.1(a). In the plan and report, Dr. Garzillo provided his

opinions concerning Diaz's long-term needs associated with the injuries identified in the medical records and the anticipated costs associated with those needs. He also set forth his opinion Diaz suffered her spinal injuries in the May 2, 2016 collision. Diaz was thirty-four years old at the time of the accident. He concluded the damage seen on the MRIs would create progressively larger problems for Diaz in the future, including intermittent acute pain and a progressive degeneration with resultant pain, degeneration, and disability. Dr. Garzillo's plan and report included a summary of anticipated future care and an estimate of the cost of that care ranging from $88,000 to $141,000. The jury returned a verdict at the low end of that range. We conclude Dr. Garzillo's plan and report are legally and factually sufficient to establish causation and support the jury's award of future damages of $88,000.

Silva also asserts Dr. Garzillo should not have been allowed to testify because he was not one of Diaz's treating physicians. Silva provides no support for this assertion. In fact, in formulating his opinions, Dr. Garzillo was allowed to rely on the records of Diaz's treating physicians and was not required to be a treating physician. *See* TEX. R. EVID. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed."). Likewise, Silva provides no support for her assertion that Dr. Garzillo's opinions are not relevant because he made them after the treatment dates. In fact, her assertion is counter to the rules of evidence, which provide expert testimony is admissible to aid the jury in its decision. *See* TEX. R. EVID. 702 ("A witness who is

qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.").

Silva's contention Dr. Garzillo is not qualified to testify regarding what other doctors put in their reports is not supported by the record. Dr. Garzillo is a licensed Doctor of Chiropractic and a certified Life Care Planner.[7] Dr. Garzillo testified he is trained to identify and treat injuries similar to the ones Diaz sustained in the May 2, 2016 collision and to estimate the future needs, cause, and costs for patients suffering from injuries similar to the ones Diaz was diagnosed by the medical providers who treated her. Dr. Garzillo reviewed Diaz's medical records, including the MRI reports. Dr. Garzillo established that, as a chiropractor, he is able to interpret MRI results. Under this record, we conclude the trial court did not abuse its discretion in overruling Silva's objections to Dr. Garzillo's testimony. Accordingly, we overrule Silva's challenge to the admission of Dr. Garzillo's testimony.

## II.    Sufficiency issues

Silva also contends she is entitled to a new trial because the evidence was factually insufficient to support the jury's award of past medical expenses and future medical expenses. Silva bases these arguments on her belief Diaz's section 18.001

---

[7] Dr. Garzillo became a certified Life Care Planner by the International Commission on Health Care in 2013 and was licensed as a Doctor of Chiropractic in 1986. He stopped treating patients as a chiropractor in 2011, but still maintained his license.

affidavits and Dr. Garzillo's expert report were legally insufficient and improperly admitted. As discussed above, those affidavits, medical records, and the expert report were properly admitted and provided legally sufficient evidence to support the jury's award of past and future medical expenses. We further conclude the evidence was factually sufficient to support those awards.

In a challenge to the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding in a neutral light. *Fulgham*, 349 S.W.3d at 157 (citing *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989)). "We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust." *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). Here, the evidence of past and future medical expenses was uncontroverted, and the damages awarded by the jury fell within the range of that evidence. Under this record, we conclude the jury's award of past and future medical expenses was not so contrary to the evidence as to be clearly wrong and manifestly unjust. We overrule Silva's factual sufficiency challenge to the past and future medical expenses awarded by the jury.

Silva further asserts the verdict should be disregarded because "there is no proper expert testimony establishing" that Silva caused Diaz's damages. According to Silva, the purported lack of expert testimony as to causation rendered the evidence of past and future medical expenses legally insufficient. We disagree. When an

accident victim seeks to recover medical expenses, she must show "what all the conditions were" that generated the expenses and "that all the conditions were caused by the accident." *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015) (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 669 (Tex. 2007)). Here, Dr. Garzillo concluded Diaz's injuries were caused by the collision. Silva presented no expert testimony to dispute that evidence.

Moreover, expert testimony is not required in every case. *See Guevara*, 247 S.W.3d at 666 (acknowledging that under certain circumstances, causation findings linking events and physical conditions could be sufficiently supported by non-expert testimony). As we explained in *State Office of Risk Mgmt. v. Adkins*, lay testimony may be sufficient to establish causation when the evidence falls within a lay person's knowledge:

> Lay testimony may establish a sequence of events that provides a strong, logically traceable connection to support a causation finding between the accident and the physical condition when such conditions (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons.

*State Office of Risk Mgmt. v. Adkins*, 347 S.W.3d 394, 399–400 (Tex. App.—Dallas 2011, no pet.) (citing *Guevara*, 247 S.W.3d at 667). For example, expert testimony was unnecessary to support a causation finding when the jury could causally connect the car accident to the plaintiff's (i) immediate head and neck pain and (ii) medical treatment for that pain without expert testimony. *Kelley & Witherspoon, LLP v.*

*Hooper*, 401 S.W.3d 841, 849–50 (Tex. App.—Dallas 2013, no pet.). Similarly, the injured party's testimony that she experienced "neck pain, mid-back pain, headaches, left shoulder pain, left leg pain, and chest pain" from a car accident combined with chiropractic records showing treatment for those injuries and no prior history of any conditions or injury that may have caused the symptoms met the requirements set forth in *Guevara* and connected the injuries to the accident. *Ten Hagen Excavating, Inc. v. Castro-Lopez*, 503 S.W.3d 463, 490 (Tex. App.—Dallas 2016, pet. denied).

Here, the medical records show Diaz sought medical treatment four days after the accident. She testified, however, that she began feeling pain the day of the accident after she arrived home: "I started feeling pain in my neck, my head, down my back, and then my hands started going numb, and they started tingling." The pain continued and "stayed the same" in the days following the accident, and her "head kind of was a little worse" because the pain caused her to toss and turn when she tried to sleep at night. Diaz also testified that, prior to the accident, she had not experienced any type of trauma to her cervical or lumbar regions or sought medical treatment for any such injuries. The first time Diaz had to seek medical treatment for pain to those regions was after the accident. Her medical records show she sought medical attention four days after the collision and the injuries she sought treatment of were "suffered as the result of a car crash" on May 2, 2016. Diaz's husband told the jury Diaz "was a very happy person" and they "lived a very active lifestyle"

before the accident, including hunting, fishing, trapshooting, and hiking on his family's ranch. He testified this changed after the accident because Diaz "is in pain every day" and she can no longer be active and can no longer participate in those activities with him. The testimony of the Diazes combined with the medical records meets the requirements set forth in *Guevara*. We conclude the jury could causally connect the car accident to Diaz's injuries even without expert testimony. *See Kelley & Witherspoon, LLP*, 401 S.W.3d at 849–50; *see also Ten Hagen Excavating, Inc.*, 503 S.W.3d at 490.

Considering the evidence in the light most favorable to the verdict and indulging every reasonable inference that would support the trial court's verdict, we conclude the jury could have found that the accident caused Diaz's injuries. Furthermore, considering all the record evidence supporting and contradicting the trial court's judgment in a neutral light, we conclude the jury could have found that the accident caused Diaz's injuries. On this record, such a finding would not be so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. Therefore, we conclude both legally and factually sufficient evidence supports a finding that the accident caused Diaz's injuries. *See El-Rayes v. Lee*, No. 05-19-00881-CV, 2020 WL 7767939, at *8 (Tex. App.—Dallas Dec. 30, 2020, no pet.) (mem. op.). Accordingly, we overrule Silva's sufficiency issues.

–27–

## III.    Directed verdict

Finally, Silva challenges the trial court's directed verdict as to liability. At the close of evidence, Diaz's counsel moved for a directed verdict, arguing Diaz was entitled to a directed verdict on liability because Silva did not dispute she struck the vehicle from behind and admitted no other person or outside factor, such as weather conditions or an obstructed view, caused or contributed to the collision. Diaz maintained she conclusively proved Silva did not use ordinary care and was negligent as a matter of law.

Silva urged the court to allow the jury to decide liability because Diaz had not proven Silva's negligence as a matter of law. Silva argued the mere fact a rear-end collision occurred does not establish the negligence of the rear driver as a matter of law. Rather, Silva contended Diaz was required to prove a specific act of negligence by Silva to obtain a directed verdict on negligence liability and failed to do so. On appeal, Silva argues "a significant fact issue exists regarding who was at fault for causing the motor vehicle accident in question."[8] We disagree.

At the outset, we note Silva failed to plead any other person's actions or inactions caused or contributed to causing the accident. As a result, Silva was not

---

[8] In the trial court, Silva raised additional arguments in opposition to the motion for directed verdict. She abandoned those arguments on appeal when she did not raise them in her brief, and we do not consider those arguments here. *See Fields v. City of Tex. City*, 864 S.W.2d 66, 68 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (not considering argument raised in trial court but abandoned on appeal) (citing *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, (Tex. 1990) (holding that court of appeals cannot reverse trial court's summary judgment on grounds not raised in the trial court or presented to the court of appeals by brief or argument)); *see also Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (holding appellate courts cannot reverse judgment on grounds not raised on appeal).

entitled to a jury question concerning another person's purported negligence. Rather, the only proper liability question would have been whether Silva's negligence proximately caused the occurrence in question. Diaz's motion for directed verdict motion focused on the lack of evidence to raise a fact question as to Silva's negligence. We conclude the evidence did not raise a scintilla of evidence to support a finding Silva was not negligent.

Although evidence of a rear-end collision on its own does not establish negligence as a matter of law, the evidence at trial established more than the occurrence of a rear-end collision. Silva admitted her vehicle struck the other vehicle from behind after she allowed her vehicle to move forward from a complete stop. She admitted there were no roadway or weather conditions that contributed to the collision, and nothing obstructed her view of the vehicle in front of her immediately prior to the collision. She further conceded she did not contend the collision was unavoidable or that any other person caused or contributed to the collision. These admissions negated the existence of a sudden emergency, established a failure to use ordinary care, and supported the trial court's directed verdict as to liability. Moreover, Silva's testimony that she moved forward after seeing the forward vehicle move does not constitute more than a scintilla of evidence to raise a fact question on liability. On the contrary, her testimony provided conclusive evidence she breached the duty of ordinary care by allowing her vehicle to move forward when the light was still red. Her allegation that the forward vehicle moved first does not negate her

failure to keep a safe distance. The evidence was, therefore, legally sufficient to support the directed verdict.

## CONCLUSION

We conclude the trial court did not abuse its discretion in its rulings on the exclusion or admission of evidence, the evidence was legally sufficient to support the trial court's directed verdict on liability, and the evidence was legally and factually sufficient to support the awards of past and future medical expenses and the finding that the collision caused Diaz's injuries. Silva, therefore, has not demonstrated the trial court abused its discretion by denying the post-judgment motion. Accordingly, we overrule Silva's sole issue and affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

200443F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

COURTNEY RENEE SILVA,
Appellant


No. 05-20-00443-CV      V.


MILAGROZ DIAZ (NOW MIMI
WEBB), Appellee

On Appeal from the County Court at
Law No. 4, Dallas County, Texas
Trial Court Cause No. CC-17-05855-
D.
Opinion delivered by Justice Partida-
Kipness. Justice Osborne
participating.[9]


In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee MILAGROZ DIAZ (NOW MIMI WEBB) recover her costs of this appeal from appellant COURTNEY RENEE SILVA.


Judgment entered this 18th day of August, 2022.

---

[9] Justice Schenck was a member of the panel at the time of submission. Justice Schenck voluntarily recused himself following the submission of the case. The remaining panel members have decided the case pursuant to Rule 41.1(b) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 41.1(b).